## Strader, &c, vs Graham.

APPEAL FROM THE LOUISVILLE CHANCERY COURT.

Depositions. Slaves. Steam boats.

CHANCERY.

Case 153.

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

October 4.

THE facts of this case are sufficiently stated in the
opinion rendered when it was formerly in this Court, and
reported in 5 B. Monroe, 173. In that opinion the prin-
ciples applicable to the whole case as then appearing,
were carefully considered and fully stated. The case now
presents essentially the same facts, and must be governed
by the same principles. A few questions, however,
made on the trial after the return of the cause to the Lou-
isville Chancery Court, were not presented when the case
was formerly here. We shall proceed briefly to notice
such of these as require comment.

1. Armstrong, the master of the boat at the time of
the alledged asportation of Graham's slaves, having been
made a party as directed by this Court, there was a gen-
eral order for re-taking depositions. In some few of the
depositions then re-taken, the witnesses referred to their
former depositions, affirming that the statements therein
were true, and adopting them as their present deposition,
most of which statements were also in substance, reite-
rated in the second deposition. The Court allowed the
former depositions thus referred to, to be read as evidence
against the objection of Armstrong, and the propriety of
so doing is now made a question. We are of opinion
that as Armstrong had, in these cases, the right and the
opportunity of cross examining the witness as to all the
statements contained in the deposition referred to, such
depositions were properly admitted as evidence against
him, and that he was not prejudiced thereby.

Depositions hav-
ing been taken
before all the
proper parties
were before the
Court, were re-
taken after the
proper parties
were made, in
which the defen-
dants refer to &
affirm their first
depositions. Held
that the first de-
positions might
properly be read
in connection
with the first.

STRADER, &C.
vs
GRAHAM.

The deposition of an obligor in a bond given for the performance of a decree or attaching of a steam boat, or the ·part owner of such boat in like case, is incompetent evidence for defendants.

2. The other defendants besides Armstrong, offered his deposition, taken before he was made a party, as evidence in their favor, but being objected to, it was rejected. The same deposition had been suppressed by the Chancellor before the first trial, on the ground that Armstrong had executed the bond by which the boat had been replevied. Upon which this Court, in the former opinion, remarked that "the deposition of Armstrong not having been objected to, should not have been rejected." The implication is, that if objected to, it should have been rejected. But considering the question as an open one, we are of opinion that the deposition was inadmissible, even if Armstrong had not been made a party, not only because being bound for the performance of the decree, he was interested in the result, but also because the bill sought to make the defendants, the owners of the boat, liable by subjecting the boat to sale for damages arising from the misconduct or neglect of Armstrong as their agent. If he improperly permitted the slaves to go on board and the owners of the boat were thereby subjected to a decree for damages, he was liable to them for the loss which his act or neglect occasioned, and the decree would be evidence against him of the fact and amount of recovery. If there should be no decree, there would be no loss to them, and no consequent liability on his part. Under these circumstances, the question being as to the misconduct or neglect of the agent, he is an incompetent witness for his principals: *Railroad Company* vs *Kidd*, (7 *Dana*, 251 ; 3 *Starkie on Evidence*, 1231-2; 1 *Greenleaf's Evidence*, 461-2.) Moreover, Armstrong was directed to be made a defendant, presumably on the ground of interest, and whatever interest he had was not acquired after his deposition had been taken, but existed at the time. The question, therefore, does not depend upon the effect of an after acquired interest, but he was interested, and therefore, incompetent at the time ; and his deposition was properly rejected.

3. Every question made on the last trial by instructions asked or given or refused, had been made on the first trial, and being presented by the record as formerly before us, was decided either expressly or in effect by the

former opinion. With regard to the criterion of damages particularly, and to the liberties which had been allowed to the slaves, and to the effect of their transient visits to Ohio and Indiana, the former opinion was explicit and its principles were strictly observed by the Chancellor on the last trial.

There is, therefore, no room for further question in this Court upon this part of the case. Having seen, however, that in another case so much of the opinion formerly rendered in this case as discusses the effect of a transient visit made by master and slave to a State in which slavery is prohibited by the fundamental law, has been supposed to involve the principle or inference, (so far at least as the opinion of the writer was concerned,) that the slave though once free by reason of such visit, becomes a slave again by a voluntary return to Kentucky, we take this opportunity of relieving the opinion from such a misconstruction. The opinion contains no concession either express or implied, that the slaves in question were ever free, or could properly have become so by being temporarily in a free State with their master or other citizen of this State, having control over them. On the contrary, it is clearly and repeatedly stated, that the Court does not admit that in consequence of such a fact, and by force of the mere general prohibition of slavery in the fundamental or declaratory law of the State, which might be thus visited, the relation of master and slave, as existing under the laws of their own State, would be affected. And a question is made even as to the effect to be given here, to the decision of a tribunal in the free State, which upon the appeal of the slave there, should have declared him free.

It is true, the fact that the slaves had voluntarily returned with their master or his representative, was considered of some importance, not as affecting the general question of the effect of the foreign law, but rather as excluding that question from this case, or at least of conclusively relieving the case from the operation of that law. And it was deemed material in a case of this character, that even those jurists who maintained that by an appeal to the foreign law, while within its jurisdiction,

*The former opinion in this case does not concede that if the owner take his slave to a State where slavery is not tolerated, or permit it to be done but for a transient purpose only, that the slave thereby becomes free; but upon returning he becomes again a slave, on the contrary, clearly and repeatedly stated that such a consequence from such a fact was not admitted.*

the slave, though taken there with his master for a tem-
porary purpose, may obtain the benefit of that law, con-
cede that if he voluntarily return with his master to his
own country, without such appeal, he is still a slave by
its laws.

It is to be observed too, that in this case, the law could
be judicially pronounced only in reference to the facts of
the case of which the voluntary return of the slaves was
one. And if any discrimination should be made in the
consideration of that opinion, whereby one portion or
principle should be ascribed to the Judge who wrote it,
rather than to the Court, (for which, however, there was
no ground in that case,) it would seem more reasonable
to ascribe to the Court the decision of the very question
presented by the case, including all its facts, and to the
Judge who wrote the opinion the reason given in support
of it, or any general discussion relating to it.

Perceiving no error in the present record to the preju-
dice of the appellants, the decree is affirmed.

*Duncan* for appellants; *Robertson, Harlan and Pirtle*
for appellee.